DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Michael E. Doepker, appeals a judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that denied his motion for modification of child support and found him in contempt. We affirm in part and reverse in part.
Appellant and Appellee, Theresa Thrush, f.k.a. Doepker, were married on March 23, 1983. Two children were born during the marriage: Katie, born March 15, 1984, and Matthew, born December 24, 1985. On October 5, 1989, the parties were granted a divorce. The separation agreement incorporated in the divorce decree gave custody of the minor children to Theresa and granted standard visitation rights to Michael. Michael agreed to pay $122.00 plus two percent poundage per week in child support, to continue until the later of the children's eighteenth birthdays or graduations from high school. In 1990, Michael's support obligation was increased to $292.67 per month for each child. Support was further increased to $354.35 per month for each child in 1994.
On August 25, 1995, Michael moved for a reduction in his child support obligation, arguing that he had been laid off from his employment as an accountant as of May 10, 1995. The trial court dismissed the motion on January 12, 1998, noting that no action had been taken on the motion for at least sixty days. On January 12, 1998, the Child Support Enforcement Agency (CSEA) moved the trial court to hold Michael in contempt for failure to meet his support obligation. On February 20, 1998, Michael renewed his motion for a reduction in child support. A hearing was conducted before a magistrate, who recommended that the motion for reduction in child support be denied. Michael timely objected to the magistrate's decision. On September 2, 1998, the trial court overruled his objections and adopted the magistrate's decision. The trial court denied Michael's motion for modification of child support; entered judgment in favor of Theresa in the amount of $17,300.78 in child support arrearages; and found Michael in contempt for failure to pay his support obligation. This appeal followed.[1]
ASSIGNMENT OF ERROR V
The trial court erred in finding [Michael] in contempt of court.
Contempt is the disobedience of a lawful court order.Windham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. See, also, R.C. 2705.02(A). R.C.2705.031(B)(1) provides that "[a]ny party who has a legal claim to any support ordered for a child * * * may initiate a contempt action for failure to pay the support." Although contempt proceedings are not fundamentally civil or criminal in nature, they may be classified as either civil or criminal based on the character and purpose of the sanctions imposed. Denovchek v. Bd. of TrumballCty. Commrs. (1988), 36 Ohio St.3d 14, 16. Sanctions that are designed to benefit the complainant by remedying the contempt or coercing compliance with the court's order are civil in nature; in contrast, criminal sanctions are punitive in nature and often involve an unconditional prison sentence or fine. Id. See, also,Smith v. Smith (Dec. 27, 1995), Wayne App. No. 95CA0017, unreported, at 3-4.
In this case, the trial court found Michael in contempt for failure to meet past child support obligations. The court imposed a prison sentence of three days. The court further stated that execution of this sentence would be suspended provided that Michael (1) paid all court costs within sixty days; (2) met current support obligations, opened a financial account and made arrangements to keep support payments current, and made additional payments of $50.00 per month toward arrearages; and (3) served three days community service through the Summit County Adult Probation Department. The contempt order, therefore, addressed Michael's past failure to meet his support obligation, but conditioned suspension of the prison sentence on future conduct. A contempt proceeding, and any resulting sanctions, may contain elements of both civil and criminal contempt. Cincinnati v.Cincinnati District. Council 51 (1973), 35 Ohio St.2d 197, 206, citing United States v. United Mine Workers of America. (1947),330 U.S. 258, 259, 91 L.Ed 884, 889. Although elements of the court's sanction were punitive in nature, the primary objective was to ensure future compliance with Michael's child support obligation. Accordingly, the contempt in this case is primarily civil in nature.
This court will not reverse a trial court's determination in a civil contempt proceeding absent an abuse of the trial court's discretion. Burchett v. Miller (1997), 123 Ohio App.3d 550, 552;Wise v. Wise (Apr. 14, 1999), Summit App. No. 19167, unreported, at 4. In this case, Michael acknowledged that he had not paid child support for the two years preceding the hearing. Although he argued that he failed to pay because his financial position changed considerably after the loss of his accounting job, this fact alone does not require the conclusion that the trial court's decision was an abuse of discretion. Michael's fifth assignment of error is overruled.
ASSIGNMENT OF ERROR IV
 The trial court erred in utilizing the sum of $52.02 bi-weekly for health care costs in its calculation of child support.
The trial court concluded that "the children of the parties are covered under the medical insurance of the step-father. The out-of-pocket expense is $52.02 bi-weekly." As a consequence, the court adjusted Theresa's financial obligation for the children downward by $1352.52 on an annual basis. Michael has argued that this adjustment reflects an abuse of the trial court's discretion.
Theresa testified that Katie and Matthew are covered by health insurance purchased through her current husband's employer. She stated that the total monthly cost of the health plan, which also covers Theresa, her husband, and their daughter Hanna, is $145.64. Theresa testified that she did not know what portion of the payment was attributable to Katie and Matthew, but that she could get that information from her husband's employer. The court instructed Theresa to provide the information within forty-eight hours of the hearing. The record does not indicate that the court received this information and is barren of any information with respect to the amount paid by Theresa's current husband to provide the children with medical insurance. Accordingly, Michael's fourth assignment of error is sustained.
ASSIGNMENT OF ERROR I
 The trial court's finding in paragraph [eight] of the findings of facts [sic] as to [Michael's] efforts at re-employment was incorrect, incomplete, and misleading.
ASSIGNMENT OF ERROR II
 The trial court erred in imputing income of $40,000.00 per year to Appellant.
ASSIGNMENT OF ERROR III
 The trial court erred in overruling [Michael's] motion for reduction in child support.
In his first and second assignments of error, Michael has argued that the trial court incorrectly imputed income to him as an underemployed parent. Based on this allegation, his third assignment of error challenges the propriety of the trial court's denial of his motion for a modification of his support obligation.
The imputation of income in a child support action involves two stages. "First, the lower court must find that a party is voluntarily unemployed or underemployed * * *. Second, once a party is found to be voluntarily unemployed or underemployed, the potential income to be imputed to that party must be determined in accordance with the considerations listed in R.C. 3113.215(A)(5)(a)."Badovick v. Badovick (1998), 128 Ohio App.3d 18, 23. Both are factual determinations that must be based on the circumstances of each case, and, therefore, they will not be disturbed on appeal in the absence of an abuse of discretion. Rock v. Cabral (1993), 67 Ohio St.3d 108, syllabus.
The magistrate's findings of fact as adopted by the trial court provided, in part:
[Michael] has a Bachelor of Science degree in Accounting.
 From 1988 through 1995, he was employed by Bell and Howell in Wooster as the Accounting Manager. At that time he was earning approximately $43,000.00 per year. Following the loss of his job, he was given a severance package and was on unemployment for six (6) months, went to the out placement agency looking for work [sic]. He called
 Account-temps on only one occasion. [Michael] admittedly had other problems that he said affected his ability to seek employment in accounting, although prior to that time his whole career was in the accounting field.
For the past two (2) years, [he] has been self-employed.
 He is doing remodeling and new construction exterior work as a subcontractor.
Michael has argued in his first assignment of error that the trial court's recitation of the history of his employment ignored the evidence in the record. In essence, Michael has argued that the trial court's conclusion that he was voluntarily underemployed constituted an abuse of discretion. This allegation is without merit.
Michael's employment as an accountant was terminated in 1995. He testified that for several months following his termination, he looked for another accounting position. Specifically, he stated that he worked through an outplacement agency, which provided tools for seeking employment, but did not act as a job placement agency. Michael recalled that he contacted a placement agency, Accountemps, once during this period of time and that he did not follow up on the one job contact he received through the company because he felt underqualified. He testified that he sent out numerous resumes. Michael acknowledged, however, that he had stopped looking for work as an accountant after several months and that he was not seeking an accounting placement at the time of the hearing. He had been working in the construction business for approximately two years, and indicated that his plans did not include returning to work as an accountant:
 Part of the outplacement that I went through was a self-assessment. You find out what you want to do * * * what is best for you. And that causes a lot of reflection. After some period of continuing to look in the accounting field, and being frustrated by not getting what I was looking for, I took a look back at my professional career and realized that it isn't really what I wanted to do anyway.
I didn't — I was never really happy being behind a desk.
 I looked — I just decided that it [was] something I didn't want to do. Additionally, I felt that it would be difficult for me to find employment in the accounting field for other reasons.
The trial court concluded that "the evidence before the Court support[ed] voluntary underemployment." Given the evidence in the record, the trial court did not act in an unreasonable, arbitrary, or unconscionable manner in concluding that Michael was voluntarily underemployed. See Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401. Accordingly, this determination did not amount to an abuse of the trial court's discretion, and Michael's first assignment of error is overruled.
In his second assignment of error, Michael has argued that the trial court incorrectly concluded that an annual income of $40,000.00 should be imputed to him due to voluntary unemployment. Specifically, he has maintained that the court's determination reflects assumptions with respect to his employability that are not supported by facts in the record. We agree.
For the purposes of determining child support, income of an unemployed or underemployed parent includes both the actual gross income of the parent and any potential income assigned by the court. See R.C. 3113.215(A)(1) and (5)(a). Potential income consists of:
 "[i]mputed income that the court * * * determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides[.]
(Emphasis added.) R.C. 3113.215(A)(5)(a). Evidence before the trial court indicated that Michael had earned approximately $43,000.000 as an accountant prior to his layoff in 1995. His construction business had earned $7,500.00 in net income for the business year preceding the hearing. The record does not contain any evidence of prevailing job opportunities and salaries for accountants in the community. After noting that Theresa, who did not have an accounting degree, was employed as a bookkeeper and earned approximately $25,480.00 per year, the court concluded:
 It is easy, therefore, to assume that with an accounting decree [sic], working full-time, [Michael] could earn $40,000.00 per year, at least. Therefore, this Court will impute to [Michael] annual income of $40,000.00 * * *.
Failure to consider the factors enumerated in R.C.3113.215(A)(5)(a) constitutes an abuse of discretion. SeeBadovick v. Badovick, 128 Ohio App.3d at 23. In this case, the trial court did not consider "the prevailing job opportunities and salary levels in the community" in which Michael resided. See R.C. 3113.215(A)(5)(a). The trial court's determination that an income level of $40,000.00 should be imputed to Michael, therefore, was an abuse of discretion. Michael's second assignment of error is well taken.
A trial court may order modification of a child support obligation upon motion of the obligor or obligee when the court determines, pursuant to R.C. 3113.215(E), that the support obligation has increased or decreased by at least ten percent. R.C. 3113.215(B)(4). Income, as defined by R.C. 3113.215(A)(1)(b) to include imputed income, is one factor in this calculation. See R.C. 3113.215(A) and (E). Because the trial court incorrectly calculated the level of imputed income in this case, the conclusion that a change of circumstances warranting modification had not occurred is in error. Michael's third assignment of error, therefore, is also sustained.
Michael's second, third, and fourth assignments of error are sustained. His first and fifth assignments of error are overruled. The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded to the trial court for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
LYNN C. SLABY FOR THE COURT WHITMORE, J.
BATCHELDER, J.
CONCUR
[1] Michael's assignments of error have been rearranged for ease of discussion. His first, second, and third assignments of error have been consolidated.