OPINION
{¶ 1} Attorney Steven L. LoDico appeals from the trial court's order finding him in contempt of court and from the sixty day jail sentence imposed upon him by the court. The appellee is the State of Ohio.
 {¶ 2} The contempt finding occurred during a pre-trial hearing wherein Appellant was ostensibly representing two different criminal defendants, to wit State v. John Cameron,
Stark County Court of Common Pleas, Case No. 2003CR1507 andState v. Rhydean Zachary, Stark County Court of Common Pleas, Case No. 2003CR1237. A question arose as to whether appellant was in fact representing Mr. Cameron. Near the conclusion of the pre-trial hearing, the following exchange occurred between the trial judge, Mr. Cameron, and the appellant:
{¶ 3} "THE COURT: What is your issue, Mr. Cameron?
{¶ 4} "THE DEFENDANT: I just want to come to the Court and say I felt from the outset of this case I never been convicted of a felony. I never harmed anybody. I understand that the charges against me —
{¶ 5} "THE COURT: Well, wait a minute, Mr. Cameron. You have — you're starting to make a statement here, and at least the lawyer that is now known as your lawyer now has for whatever reason decided not to make a statement on your behalf.
 {¶ 6} So my first question to you is are you still being represented by Mr. LoDico? Because you can't be talking with your lawyer standing here.
{¶ 7} "THE DEFENDANT: Right now I don't know what's going on. I'll kind of put it that way.
{¶ 8} "THE COURT: Mr. LoDico, are you still going to represent Mr. Cameron?
{¶ 9} "MR. LODICO: No, sir. He's got to get another lawyer; in other words, I don't know what's going on. I was told just to shut up a few minutes ago, so I'm going to keep my mouth shut.
{¶ 10} "THE COURT: I asked you a question.
{¶ 11} "MR. LODICO: And I told the Court I have no clue what's going on.
{¶ 12} "THE COURT: Are you representing this man?
{¶ 13} "MR. LODICO: I haven't been retained by this man.
{¶ 14} "THE COURT: Answer the question. Are you representing him or are you not representing him?
{¶ 15} "MR. LODICO: I'm not representing him.
{¶ 16} "THE COURT: Then Mr. Cameron, you don't have a lawyer.
{¶ 17} "THE DEFENDANT: Yes.
{¶ 18} "THE COURT: So I'm going to continue your case until Wednesday, and you're going to have to find yourself a new lawyer.
{¶ 19} "THE DEFENDANT: Okay.
{¶ 20} "THE COURT: Because Mr. LoDico, are you officially withdrawing from this case, Mr. LoDico?
{¶ 21} "MR. LODICO: I'm saying that I can't be effective in representing Mr. Cameron. So however the Court wants to view that, the Court can view that.
{¶ 22} "THE COURT: Mr. LoDico, you have just stepped over the line of insubordination, insolent, rudeness and overreacting, and I find you in contempt of court —
{¶ 23} "MR. LODICO: Yes, sir.
{¶ 24} "THE COURT: — for not responding to the questions that I asked you.
{¶ 25} "MR. LODICO: Yes, sir.
{¶ 26} "THE COURT: I attempted on two occasions to quiet you down because you started on one of your routines again about live your life, all that's gone on with you. You have not responded, you have been insolent, insubordinate.
 {¶ 27} I find you in contempt; 60 days in the Stark County Jail.
 {¶ 28} Take him out of my courtroom.
{¶ 29} "MR. LODICO: Do I get to run my hearing with my client?
{¶ 30} "THE COURT: Take him out.
 {¶ 31} (End of hearing).
 {¶ 32} The following day, December 30, 2003, the trial court filed a Journal Entry expanding on its reasons for finding appellant in contempt of court in In re LoDico, Stark County Court of Common Pleas, Misc. Case No. 2003MI00316. Additionally, on December 30, 2003, the trial court conducted a bond hearing upon appellant's motion to set bond pending appeal. On December 31, 2003, the trial court filed a Journal Entry overruling appellant's motion for bond pending appeal, and again expanded upon its reasons for finding appellant in contempt of court on December 29, 2003.
 {¶ 33} In a single assignment of error, appellant contends the trial court abused his discretion in finding him guilty of criminal contempt since such finding was unreasonable and unsupported by the evidence:
 {¶ 34} "I. Judge Richard D. Reinbold of the Stark County Court of Common Pleas abused his discretion in finding Steven L. Lodico, Esq. in direct criminal contempt of court on December 29, 2003."
 I. {¶ 35} In the state of Ohio, criminal contempt, the purpose of which is to punish, may be termed indirect or direct. See Inthe Matter of Lands (1946), 146 Ohio St. 589, 595; In re McGinty
(1986), 30 Ohio App.3d 219, 507 N.E.2d 441, 445; In re Carroll
(1985), 28 Ohio App.3d 6, 501 N.E.2d 1204, 1208. Indirect contempt occurs when the contemnor's actions occur outside the presence of the court. See City of Cincinnati v. Dist. Council51 (1973) , 35 Ohio St.2d 197, 202, 299 N.E.2d 686, 691; In reMcGinty, supra, 28 Ohio App.3d at 223, 507 N.E.2d at 445; seealso In re Gonzalez (1990), 70 Ohio App.3d 752, 755,591 N.E.2d 1371, 1373 . Whereas, direct contempt "is an act `of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."' In re McGinty,507 N.E.2d at 445 (citing Ohio Rev. Code § 2705.01); City of Cincinnati v.Dist. Council 51, supra, 35 Ohio St.2d 201-202,299 N.E.2d at 691-692. In the case at bar, because appellant's actions which resulted in the finding of criminal contempt occurred in the presence of the judge, his conduct, if contemptuous, would be considered direct contempt. Pursuant to Section 2705.01 of the Ohio Revised Code, direct contempt may be summarily punished:
 {¶ 36} "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."
 {¶ 37} The Supreme Court has defined summary contempt as:
 {¶ 38} "a procedure which dispenses with the formality, delay and digression that would result from the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial."Sacher v. United States, (1952) 343 U.S. 1, 9, 72 S.Ct. 451,455, 96 L. Ed. 717, 724.
 {¶ 39} While a finding of contempt is within the discretion of the court, to sustain a conviction of criminal contempt the elements of the offense must be proven beyond a reasonable doubt.Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250,416 N.E.2d 610. The elements include an intent to defy the court and conduct which "poses an imminent threat to the administration of justice." Catholic Social Servs. v. Howard (1995),106 Ohio App.3d 615, 666 N.E.2d 658, 661; see also In re Carroll (1985),28 Ohio App.3d 6, 501 N.E.2d 1204, 1208-09.
 {¶ 40} The standard for reversal of a contempt finding is "abuse of discretion." As set forth by the Ohio Supreme Court inState v. Birkel (1981), 65 Ohio St.2d 10, 417 N.E.2d 1249: "This court will not reverse the decision of the court below in a contempt proceeding in the absence of a showing of an abuse of discretion." In State v. Adams (1980), 62 Ohio St.2d 151,404 N.E.2d 144, the Ohio Supreme Court composed the following definition: "The term `abuse of discretion' connotes more than error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id. at 157-58,404 N.E.2d at 149. The definition of "abuse of discretion" is in the disjunctive. Most findings of abuse of discretion are based upon unreasonableness, rather than a finding of arbitrary or unconscionable. Moreover, a decision is "unreasonable" where there is "no sound reasoning process" supporting it. AAAA Enter.Inc. v. River Place Cmty. Urban Redevelopment Corp., (1990),50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601.
 {¶ 41} It should be noted that in regard to the discretion of the trial court, "[t]he general rule in cases of direct contempt is that the trial court's judgment or order of direct contempt must itself contain a complete and clear statement of the facts upon which the conviction is based." State v. Schiewe (1996),110 Ohio App.3d 170, 173, 673 N.E.2d 941, 943; State v. Moll
(Jan. 10, 1992), 6th Dist. No. 91WD010; State v. Treon (1963), 91 Ohio Law Abs. 229, 188 N.E.2d 308, 316. This is inapposite to the usual rule. Numerous summary contempt cases, primarily involving legal counsel, have been reversed, for failure of the trial court to set forth the facts that constitute contempt "fully, clearly, and specifically" in its judgment or order. The guilt of a person accused of contempt must be shown affirmatively in the record. Id.
 {¶ 42} "A prevalent misconception exists even now that direct contempt is synonymous with summary (i.e., without due process) contempt; or, to state it differently, that every direct contempt justifies a summary sanction; or, to again state it differently, that where the contumacious act is committed "within the presence of the court," it need not constitute an "imminent threat to the administration of justice" to justify a summary sanction. Assuming a contumacious act qualifies as a direct contempt, however, is simply a precursor to one of the essential issues of present-day contempt law in America-whether the circumstances of the direct contempt include both essential elements of summary contempt: (a) the "judge's personal knowledge" and (b) the "imminent threat to the administration of justice." This is the issue that must ultimately be resolved, because it determines whether summary sanction is justified or whether a multitude of constitutional rights are applicable in a due process hearing."In re Caron (April 27, 2000), 110 Ohio Misc. 58, 89-90,744 N.E.2d 787, 809; See also, William F. Chinnock Mark P. Painter, The Law of Contempt of Court in Ohio, 34 U. Tol. L. Rev. 309, 323-24.
 {¶ 43} Another way to express the concept that summary contempt consists of dual essential elements is to recognize the rule that not every finding of direct contempt justifies a summary sanction. Odem Baker, Direct and Constructive Contempt (1974), 26 Baylor L.Rev. 147. The court in In re Davis (1991),77 Ohio App.3d 257, 263-264, 602 N.E.2d 270, 274-275, states this often-overlooked rule simply and to the point:
 {¶ 44} "It seems clear that under the rules of Cooke
[(1925), 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767] and Oliver
[(1948), 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682] a summary proceeding is not authorized simply because the conduct constitutes direct contempt. Even if the external facts are clear because they took place in the presence of the judge, the effect of the contumacious conduct must create a `need for speed' to immediately suppress the court-disrupting misbehavior and restore order to the proceedings. Absent that need, an evidentiary hearing is required even though the contempt is `direct.'" In reCaron (April 27, 2000), 110 Ohio Misc. 58, 91, 93744 N.E.2d 787, 812; In re Davis (1991), 77 Ohio App.3d 257, 263-64,602 N.E.2d 270, 274-75.
 {¶ 45} To justify a finding of summary contempt and imposition of summary sanction today, the contumacious act must pose a threat that requires immediate sanction to preserve the dignity and authority of the court. As stated by the Ohio Supreme Court in City of Cincinnati v. Dist. Council 51 (1973),299 N.E.2d 686, 697(Brown, J., Dissenting): "The invocation of the court's summary power for direct contempt is an awesome power that the court must be cautious in using [that] should be restricted to activity that threatens the integrity or the very functioning of the judicial process." Summary contempt was designed to fill "the need for immediate penal vindication of the dignity of the court." Cooke v. United States, 267 U.S. 517,536 (1925).Summary contempt under the federal statute,18 U.S.C. § 401 (1988) and rule, Fed.R.Crim.P. 42, is reserved for cases where there is such a "serious threat to orderly procedure that instant and summary punishment, as distinguished from due and deliberate procedures [is] necessary." Harris v. United States
(1965), 382 U.S. 162, 165. See also, William F. Chinnock Mark P. Painter, The Law of Contempt of Court in Ohio, 34 U. Tol. L. Rev. 309, 323-24. The actions in the case at bar due not rise to the level of a serious threat to orderly proceedings.
 {¶ 46} Thus, the essential factors which identify summary contempt justifying both summary finding and summary sanction are (1) the judge's personal knowledge of the contumacious act; and, (2) the necessity for summary action because of the imminent threat to the administration of justice. Where only the judge's personal knowledge exists, a summary finding may be justified, but a summary sanction is not. Where both elements co-exist, the judge's personal knowledge justifies summary finding. Likewise, the imminent threat justifies summary sanction, and no due process hearing is required. In cases of indirect contempt, either the lack of the judge's personal knowledge or the absence of an imminent threat necessitates a trial with due process guarantees. In re Caron, supra, 110 Ohio Misc. 91744 N.E.2d 787, 810; In re Davis (1991), 77 Ohio App.3d 257, 263-64,602 N.E.2d 270, 274-75. See also, William F. Chinnock Mark P. Painter, The Law of Contempt of Court in Ohio, 34 U. Tol. L. Rev. 309, 325-326.
 {¶ 47} "Because of the summary nature of a direct contempt conviction, the court must be careful to guard against confusing actions or words which are contemptuous to the judge's personal feelings or sensibilities and actions or words which constitute punishable, criminal contempt of a summary nature because of posing an actual or imminent threat to the administration of justice. In re Little (1972), 404 U.S. 553, 92 S.Ct. 659,30 L.Ed.2d 708.
 {¶ 48} `The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil. . . . [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate.' Craigv. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 91 L.Ed. 1546
(1947). `Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.' Brown v. United States,356 U.S. 148, 153, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958)" In re Little
(1972), 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708. See also Craig v. Harney(1947), 331 U.S. 367, 376); State v. Conliff (1978), 61 Ohio App.2d 185, 401 N.E.2d 469, syll.; State v. Schiewe(1996), 110 Ohio App.3d 170, 173, 673 N.E.2d 941,943; William F. Chinnock Mark P. Painter, The Law of Contempt of Court in Ohio, 34 U. Tol. L. Rev. 309, 323-24.
 {¶ 49} In State v. Conliff (1978), 61 Ohio App.2d 185,401 N.E.2d 469, the Court of Appeals of Franklin County held that displays of ill-mannered conduct are not summarily punishable under the law of direct contempt unless they pose an imminent threat to the administration of justice. In Conliff, the defendant was prosecuted for assault and disorderly conduct after he threw a pie in the face of Governor Rhodes at the Ohio State Fair. After the jury acquitted Conliff of the assault charge but found him guilty of disorderly conduct, Conliff asked the judge if he wanted "his ounce of flesh." The judge then summarily held Conliff in contempt for his remark and sentenced him to ten days in jail. In reversing the conviction, Judge John McCormac wrote:
 {¶ 50} "The circumstances in which defendant made the offensive statement are relevant in determining whether defendant's conduct was of such nature as to amount to criminal contempt. In the instant case, the record fails to disclose that the statement constituted `an imminent threat to the administration of justice.' The judge stated that he was about to sentence the defendant on the disorderly conduct charge `* * * as soon as (he) had some order in the courtroom.' It is apparent from the judge's statement that the courtroom was somewhat less than orderly when the initial, off the record, inquiry was made. The record does not indicate that the defendant's statement was loud or boisterous or otherwise disruptive of the court's proceeding. After defendant directed his comment to the court, the judge asked him to verify it, which he did, after the jury had withdrawn from the courtroom.
 {¶ 51} "Under these circumstances, defendant's remark, while unwise, insolent and probably personally insulting to the judge, was not of a nature which `* * * tends to bring the administration of the law into disrepute and disregard or otherwise tends to impede, embarrass or obstruct the court in the performance of its functions.' In re Green (1961),172 Ohio St. 269, 175 N.E.2d 59. (Paragraph one of the syllabus.)
 {¶ 52} "We have found no cases supporting summary criminal contempt for a statement as mild as the one in this case, occurring singly, at the end of the proceeding, where the only apparent effect was to ruffle the judge's sensibilities.
 {¶ 53} "While displays of ill-mannered conduct are not condoned by this court, neither are they punishable under the law of direct contempt unless they pose an imminent threat to the administration of justice. We are certainly sympathetic to the judge who was exposed to the biting remark of the defendant, but the administration of justice is best served by restricting the power of summary direct contempt to that conduct which tends to impede, embarrass or obstruct the court in the performance of its function rather than permitting it to be applied to a single comment that only tends to indicate a personal, although not disruptive, feeling of contempt by the defendant towards the court and the system of justice. To allow a summary conviction of direct contempt with the offended judge being judge, jury and executioner, with the power to impose a severe jail sentence, poses too great a threat of arbitrary treatment to permit it to be based on less. The instant case is a good example. The defendant both in his incourt attitude and out-of-court conduct probably radiated contempt for the institutions of government and, to cap it off, had been acquitted of the major charge. The stage was set for unintentionally using summary contempt for purposes for which it was not designed." Id. at61 Ohio App.2d 190-91; 401 N.E.2d 474. See also, State v. Calabretta (May 7, 1986), 5th Dist. No. CA-3170.
 {¶ 54} The Conliff court further noted: "Moreover, even if the offensive statement had constituted contempt, since it occurred at the end of the proceedings and was directed personally to the trial court, the trial court should have referred the matter to another judge since his objectivity could reasonably be questioned. See American Bar Association Project on Standards for Criminal Justice, The Function of the Trial Judge 95, Section 7.5 (1972). There was no need to summarily punish the defendant to protect the integrity of the ongoing proceeding as that proceeding had ended, with the exception of imposing the sentence for the disorderly conduct conviction." Id. at61 Ohio App.2d 190-91; 401 N.E.2d 474.
 {¶ 55} In In re Gonzalez, 8th Dist. No. 81831, 2003-Ohio-1960, the following exchange between the court and counsel occurred:
 {¶ 56} "APPELLANT: Your Honor, I will advise the Court that we have acknowledged this Court that we will not —
 {¶ 57} "COURT: He can sign it or I can hold him until he signs it, your choice.
 {¶ 58} "APPELLANT: We'll sign it over objection, and I would like that on the record also.
 {¶ 59} "COURT: And it is on it.
 {¶ 60} "COURT: Don't write on that. Don't you dare write on that. If you write on there, I'm going to hold you in contempt. He can sign it or he can stay, your choice Mr. Gonzalez. But you're not writing on the order. You don't write on other orders of the Court and you don't write on this one. Did you understand?
 {¶ 61} "APPELLANT: I understand, your Honor. Your Honor —
 {¶ 62} "COURT: That's as far as you get. One more word — sign it
 {¶ 63} "APPELLANT: I'll get my client to sign it. Yes, your honor.
 {¶ 64} "COURT: I have nothing to say, that's right.
 {¶ 65} "APPELLANT: I thought we were still in America, apparently we're not.
 {¶ 66} "COURT: All right, now you're in contempt.
 {¶ 67} "APPELLANT: Thank you.
 {¶ 68} "COURT: Holding cell. You're not going to say that kind of stuff to me. You have the right to go to the court of appeals. I noted every one of your objections on the record. Holding cell.
 {¶ 69} "APPELLANT: Thank you, your Honor —
 {¶ 70} "COURT: Holding cell now."
 {¶ 71} Id. at ¶ 17-31. (Emphasis added). In reversing the trial court's decision finding counsel in contempt, the Court of Appeals stated: "[g]iven the state of the record, and mindful that the power of summary direct contempt should be restricted to a conduct that tends to impede, embarrass or obstruct the court in the performance of its functions, we fail to perceive an imminent threat to the administration of justice by appellant's conduct sufficient to warrant a finding of direct criminal contempt. See State v. Conliff, supra. Although the appellant's conduct was arguably improper, it did not pose an imminent threat to the administration of justice sufficient to warrant a finding of direct contempt." Id. at ¶ 52.
 {¶ 72} In In re Brannon, 2nd Dist. No. 19619, 2003-Ohio-4423, the court ruled "defense counsel's conduct in twice interrupting the prosecutor, expressing disagreement with trial judge's ruling on one occasion, and requesting trial judge to hold her voice down after judge spoke loudly when she admonished counsel to stop bickering did not constitute criminal contempt of court." The court reasoned: "[f]inally, we fail to see how Mr. Brannon's mere request to have the judge hold her voice down amounted to contemptuous conduct. The trial judge may have been offended by Mr. Brannon's remark but Brannon's remark presented no actual or imminent threat to the administration of justice." Id. at ¶ 92.
 {¶ 73} In the case at bar, Mr. Cameron did not state that appellant was presently representing him. Appellant three times informed the court that he did not represent Mr. Cameron. (T. at 3-4). The court informed Mr. Cameron that he did not have an attorney, and that the court would continue the pre-trial to allow him to have counsel. (Id.). Accordingly, the proceedings were at an end. The court's inquiry concerning appellant's withdrawal from the case was superfluous in light of the trial court's previous statements to Mr. Cameron. "Under these circumstances, defendant's remark, while unwise, insolent and probably personally insulting to the judge, was not of a nature which "* * * tends to bring the administration of the law into disrepute and disregard or otherwise tends to impede, embarrass or obstruct the court in the performance of its functions. In ReGreen (1961), 172 Ohio St. 269. Conliff, supra, at 190."State v. Calabretta (May 7, 1986), 5th Dist. No. CA-3170. Although not rising to the level of direct contempt, the appellant's actions and comments may be actionable as violating the Code of Professional Responsibility. DR 7-106 provides in part: "(C) In appearing in his professional capacity before a tribunal, a lawyer shall not: "* * * "(6) Engage in undignified or discourteous conduct which is degrading to a tribunal." EC 7-36 states, in part: "Judicial hearings ought to be conducted through dignified and orderly procedures designed to protect the rights of all parties. Although a lawyer has the duty to represent his client zealously, he should not engage in any conduct that offends the dignity and decorum of proceedings. While maintaining his independence, a lawyer should be respectful, courteous, and aboveboard in his relations with a judge or hearing officer before whom he appears. * * *". EC 9-6 states: "Every lawyer owes a solemn duty to uphold the integrity and honor of his profession, to encourage respect for the law and for the courts and the judges thereof; * * * to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety, but also the appearance of impropriety." Accordingly, a trial court is not without recourse for rude and discourteous behavior; the court can refer the matter to the Office of Disciplinary Counsel.
 {¶ 74} In the case at bar, the stenographic record of the pre-trial conference does not support a finding that appellant's actions rise to the level of presenting an actual or imminent threat to the administration of justice.
 {¶ 75} However the trial court, on two separate occasions after finding appellant guilty of contempt and imposing sentence upon him, expanded upon its reasons for the contempt finding. Great deference must be accorded the trial court's decision. However the propriety of expanding the findings to include matters not supported by the contemporaneously recorded record is questionable.
 {¶ 76} In State v. Wilson (1972), 30 Ohio St.2d 312,285 N.E.2d 38, the Ohio Supreme Court noted "In light of the foregoing, it is immaterial to the regularity of appellant's conviction that the trial court made additional findings of contempt after imposing sentence (and spread the same upon the record) which are not clearly supported by the record. It is also immaterial that such practice is to be condemned." Id. at 317; 285 N.E.2d 41-42. The court in Wilson noted that much of what was alleged to be contemptuous conduct by the attorney was not contained in the stenographic record of the proceedings. Id. at 314, 285 N.E.2d at 314. The court noted:
 {¶ 77} "This unfortunate episode constitutes the entire portion of the record before us which could possibly support the finding of contempt. The question is, does it?
 {¶ 78} "The incident described must have been the culmination of previous contentions to which the record alludes, but it does not reveal them. The precise nature of all disruptions by counsel, including inflections, actions and gestures, should have been described in detail to the record." Id.
 {¶ 79} The court in Wilson found that the actions of the attorney that were found on the stenographic record were sufficient to support the trial court's findings. Id.
 {¶ 80} In State v. Brannon, supra, the trial court made additional findings in its judgment entry after finding an attorney in contempt. 2003-Ohio-4423 at ¶ 34, 69. The Court of Appeals, in reversing the trial court's judgment, noted that the transcript of the hearing in which the attorney was held in contempt did not support the trial court's "additional findings." Id. at ¶ 95-97.
 {¶ 81} By not placing the court's reasons for finding an individual in direct, summary contempt of court on the contemporaneously recorded record in the presence of the accused, a potential for abuse, whether real or imagined, is created. A judge reviewing the transcript of the hearing in which the accused was held in contempt of court, sensing that the record does not show the accused guilty of contempt beyond a reasonable doubt, could literally "invent" supporting facts by simply stating that the offending occurrences took place in chambers or "off the record". In such a situation where the court needs to place additional facts in the record to support the contempt finding fundamental fairness, if not due process of law, would favor a hearing in which the accused is permitted to present his or her answer to all the allegations and factual findings of the court. As noted in the trial court's judgment entry in the case at bar, the individuals present in the courtroom at the time of the occurrences could be presented to either support or refute the subsequently added facts.
 {¶ 82} Without placing the additional facts into the stenographic record in the presence of the accused, and without affording the accused, at the very least, the right to allocution, the situation is ripe for abuse. Indeed, in the case at bar, counsel was not given an opportunity to speak to the issue before or after sentencing.
 {¶ 83} "Moreover, in such a situation [where the trial court makes a summary finding of contempt], the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution. See Levine v. UnitedStates(1960), 362 U.S. 610, 613-614, 80 S.Ct. 1038, 1041-1042,4 L.Ed.2d 989; Brown v. United States (1959), 359 U.S. 41, 52,79 S.Ct. 539, 547, 3 L.Ed.2d 609; United States v. Sacher (CA2 1950), 182 F.2d 416, 418, aff'd, 343 U.S. 1, 72 S.Ct. 451,96 L.Ed. 717 (1952)". Groppi v. Leslie (1972), 404 U.S. 496,504-505, 92 S.Ct. 582, 587.
 {¶ 84} In Mitchell v. Maryland (1990), 320 Md. 756,580 A.2d 196, the Court reviewed a case in which the Defendant, who had been convicted of felony theft, was held in direct contempt for gesturing at trial judge with his middle finger following conclusion of sentencing. On appeal, the Court recognized the interests to be served by affording the accused an opportunity to speak before finding him or her in contempt: "[t]he Supreme Court has pointed out that when at least a brief opportunity is afforded for a response, a defendant may be able to offer a defense, or `present matters in mitigation, or otherwise attempt to make amends with the court.' Taylor v. Hayes, [418 U.S. 488,94 S.Ct. 2697, 41 L.Ed.2d 897 (1974) ] supra, 418 U.S. at 499,94 S.Ct. at 2703. The American Bar Association Standing Committee on Association Standards for Criminal Justice has recommended the following standard in all criminal contempt cases:
 {¶ 85} `Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment'. American Bar Association, ABA Standards for Criminal Justice, Special Functions of the Trial Judge § 6-4.4, p. 53 (1972, 1986 Supp.). In its commentary to that section, the Committee said:
 {¶ 86} "Although there is authority that in-court contempts can be punished without notice of charges or an opportunity to be heard, [Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405
(1888)] such a procedure has little to commend it, is inconsistent with the basic notions of fairness, and is likely to bring disrespect on the court. Accordingly, notice and at least a brief opportunity to be heard should be afforded as a matter of course. Nothing in this standard, however, implies that a plenary trial of contempt charges is required.
 {¶ 87} "The Supreme Court has also noted that `[e]ven where summary punishment for contempt is imposed during trial, `the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.' Taylor v.Hayes, supra, 418 U.S. at 498, 94 S.Ct. at 2703, quoting Groppiv. Leslie, supra, 404 U.S. at 504, 92 S.Ct. at 587." Id. at320 Md. 766-767, 580 A.2d 201-202.
 {¶ 88} In the case at bar, the only reasons stated contemporaneously on the record for the finding of contempt was: "Mr. LoDico, you have just stepped over the line of insubordination, insolent, rudeness and overreacting, and I find you in contempt of court — for not responding to the questions that I asked you . . . I attempted on two occasions to quiet you down because you started on one of your routines again about live your life, all that's gone on with you. You have not responded, you have been insolent, insubordinate. . . ." (T. at 5-6).
 {¶ 89} The circumstances surrounding the appellant's personal difficulties and the circumstances under which the court told counsel to be quiet do not appear in the record of the pre-trial hearing. Nowhere does the court delineate what "inappropriate comments" appellant was alleged to have uttered either in court or in chambers. The record further establishes that appellant did answer the court's question on three occasions "No, sir. He's got to get another lawyer; in other words, I don't know what's going on . . . I haven't been retained by this man . . . I'm not representing him." (T. at 3-4).
 {¶ 90} The record of the pre-trial hearing in the case at bar does not support the assertions in the subsequently filed judgment entry that the safety of the individuals in the courtroom was in jeopardy, or that the deputies in the courtroom were in any way affected by what transpired. It is also clear that when the court requested appellant to stop whatever behavior the court found inappropriate, he complied with the request.
 {¶ 91} It would further appear, from the court's own record, that whatever "agitation" appellant may have displayed, was not brought about by the court and was not directly related to whatever occurred in the court; rather as the court noted, appellant may have been having problems in his personal life.
 {¶ 92} Of equal concern to this court is the trial court's extensive reliance of "other acts" of contempt by the appellant which did not occur in the presence of this trial judge, and which were not made part of the court's record.
 {¶ 93} In Myers v. State (1889), 46 Ohio St. 473,492 N.E. 43, the appellant had been charged with contempt of court for writing and causing to be published an unflattering newspaper article concerning the trial judge. In reaching its decision finding appellant in contempt the trial judge in Myers took judicial notice of the fact that the appellant had previously been found guilty of contempt of court before a different tribunal. Id. at 492, 492 N.E. 45. The Ohio Supreme Court held: "It is not competent for him to take judicial notice of, and consider in his deliberations, that the respondent had been guilty of another contempt of the same court, for which he had theretofore been tried and found guilty. And where it appears that the consideration of such facts may have influenced the exercise of discretion, in fixing the penalty, to the prejudice of the respondent, the proceeding will be reversed for such error." Id. at ¶ 6 of the syllabus. In the body of its opinion the court in Myers stated: "[b]ut when the court assumed to take judicial notice of the facts which formed the ground of a previous proceeding for contempt against respondent, and of his being adjudged guilty, we think the court erred. If the facts were competent to be taken into consideration, — which is, at least, very questionable, — they were the subject of evidence, and could not be judicial noticed. Proof of a previous like offense is not competent evidence save in a small class of cases, where guilty knowledge is a necessary element to be shown by the state; and such proof was not necessary in this case." Id. at 492, 22 N.E. 45.
 {¶ 94} "A trial court may not take judicial notice of prior proceedings in the court, but may only take judicial notice of prior proceedings in the immediate case. Diversified MortgageInvestors, Inc. v. Athens Cty. Bd. of Revision (1982),7 Ohio App.3d 157, 159, 454 N.E.2d 1330. See, also, D BImmobilization Corp. v. Dues (1997), 122 Ohio App.3d 50, 53,701 N.E.2d 32; In re Knotts (1996), 109 Ohio App.3d 267, 271,671 N.E.2d 1357; Woodman v. Tubbs Jones (1995),103 Ohio App.3d 577, 580, 660 N.E.2d 520; State v. Velez (1991),72 Ohio App.3d 836, 838, 596 N.E.2d 545; Kiester v. Ehler (1964),9 Ohio App.2d 52, 56, 222 N.E.2d 782; Burke v. McKee (1928),30 Ohio App. 236, 238, 164 N.E. 776. The rationale for this holding is that, if a trial court takes notice of a prior proceeding, the appellate court cannot review whether the trial court correctly interpreted the prior case because the record of the prior case is not before the appellate court. Dues, supra, at 53,701 N.E.2d 32. See Deli Table, Inc. v. Great Lakes Mall (Dec. 31, 1996), Lake App. No. 95-L-012, at 13; Phillips v. Rayburn
(1996), 113 Ohio App.3d 374, 379, 680 N.E.2d 1279." State v.Blaine, 4th Dist No. 03CA9, 2004-Ohio-1241 at ¶ 19.
 {¶ 95} As previously noted, to constitute direct contempt subject to a summary finding and disposition, the offending conduct must occur in the presence of the court and must pose an"imminent threat to the administration of justice." Acts occurring in the past, under different circumstances, and before a different tribunal would not be germane to whether the accused's conduct in this case, before this judge constituted a direct, summary contempt. However if the past acts had occurred in the presence of the same judge consideration of those past transgressions would not be foreclosed.
 {¶ 96} Troubling to this court in the present case is the trial court's reference to matters occurring after the court found appellant in contempt and had imposed sentence. Specifically, the trial court noted that the following day appellant made unflattering remarks about the trial judge to the local newspaper. (Miscellaneous Journal Entry, Case No. 2003MI00316 at 1-2, filed Dec. 31, 2003). It is hard to fathom how events occurring after a finding of contempt and sentencing can be of any relevance other than in an attempt to impliedly justify the finding of contempt in the first instance.
 {¶ 97} "At times a judge has not been the image of `the impersonal authority of law' (Offutt v. United States,348 U.S. 11, 17, 75 S.Ct. 11, 15, 99 L.Ed. 11) but has become so `personally embroiled' with a lawyer in the trial as to make the judge unfit to sit in judgment on the contempt charge.
 {¶ 98} "`The vital point is that in sitting in judgment on such a misbehaving lawyer the judge should not himself give vent to personal spleen or respond to a personal grievance. These are subtle matters, for they concern the ingredients of what constitutes justice. Therefore, justice must satisfy the appearance of justice.' Id., at 14, 75 S.Ct. at 13. Mayberry v.Pennsylvania (1970), 400 U.S. 455, 465, 91 S.Ct. 499, 504-505.
 {¶ 99} The rule that a court may summarily find one in contempt is to be applied cautiously because the accused is not afford the due process protections ordinarily afforded a criminal defendant. Further, a potential for abuse exists when the judge, who is the individual charged with making the record, is also the target of the allegedly contemptuous conduct. "But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward, and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency, but it is not always possible. Of course, where acts of contempt are palpably aggravated by a personal attack upon the judge, in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed. But attempts of this kind are rare. All of such cases, however, present difficult questions for the judge. All we can say upon the whole matter is that, where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge, called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place.Cornish v. United States (C.C.A.) 299 F. 283, 285; Toledo Co.v. United States, 237 F. 986, 988, 150 C.C.A. 636." Cooke v.United States (1925), 267 U.S. 517, 539, 45 S.Ct. 390, 396.
 {¶ 100} Although appellant had been found guilty of contempt and sentenced by the trial court prior to the entry containing the reference to appellant's comments to the media, the record is not clear that the court's journal entry supplementing the record with additional findings of contempt was filed before the court became aware of the appellant's comments to the media. The journal entry supplementing the record with additional findings of contempt was not filed until December 30, 2003, the day following the court's finding appellant in direct contempt and imposing sentence. The court filed its entry prior to holding a hearing on December 30, 2003 on appellant's application for bond pending appeal. (T. Bond Hearing, Dec. 30, 2003 at 1.). The court noted prior to the beginning of the bond hearing ". . . today is the 30th of December, 10 after 4." (T. Bond Hearing, Dec. 30, 2003 at 1). The Clerk of Courts time stamp on the Journal Entry finding appellant in contempt of court and supplementing the record with additional findings of contempt reveals that the entry was filed at "03 DEC 30 PM 3:59." The court in denying appellant's request for bond pending appeal noted that appellant had contacted the local newspaper "on Tuesday morning, December 30, 2003 . . ." (Miscellaneous Journal Entry, Case No. 2003MI00316 at 1, Filed Dec. 31, 2003).
 {¶ 101} Although the comments and conduct of counsel while unwise, insolent and probably personally insulting to the judge, they were not of a nature which "* * * tends to bring the administration of the law into disrepute and disregard or otherwise tends to impede, embarrass or obstruct the court in the performance of its functions. In Re Green (1961),172 Ohio St. 269. Conliff, supra, at 190. State v. Calabretta (May 7, 1986), 5th Dist. No. CA-3170.
 {¶ 102} The record does not support a finding beyond a reasonable doubt that appellant's conduct or actions posed an imminent threat to the administration of justice, or that a summary finding and sentence were warranted.
 {¶ 103} Appellant's sole assignment of error is sustained.
 {¶ 104} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is reversed and vacated.
Gwin, P.J., and Boggins, J., concur Wise, J., concurs separately