[Cite as *State v. Adams*, 2014-Ohio-2728.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130559 |
|  |  | TRIAL NO. C-13CRB-24244 |
| Plaintiff-Appellee, | : |  |
|  |  |  |
| vs. | : |  |
|  |  | *O P I N I O N.* |
| STEVEN ADAMS, | : |  |
|  |  |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Vacated

Date of Judgment Entry on Appeal:  June 25, 2014

*Terry Nestor*, Interim City Solicitor, and *Melanie Reising*, Senior Assistant City Prosecutor, for Plaintiff-Appellee,

*The Law Office of Steven R. Adams* and *Marguerite Slagle*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.
Per Curiam.

{¶1}   Defendant-appellant Steven Adams, a defense attorney, appeals the trial court's judgment finding him in contempt of court under R.C. 2705.01 for his conduct at a hearing, and imposing a sentence of 30 days in jail and a $250 fine, which Adams could "purge" by apologizing to the court and to the city prosecutor. Because the trial court abused its discretion in finding Adams in direct contempt, we reverse the trial court's judgment and vacate the order of contempt.

**The Alleged Contemptuous Conduct and Subsequent Hearing**

{¶2}   This contempt case arises from a driving-under-the-influence prosecution in the Hamilton County Municipal Court, *State v. Amanda Pate*, case number 12TRC-8709.  Adams represented Pate in connection with that prosecution, and at a motion-to-suppress hearing on July 31, 2013.  At the hearing, Adams, Melanie Reising, a prosecutor for the city of Cincinnati, and the trial court engaged in a discussion regarding Pate's driving privileges pending trial.  Reising inquired as to whether the court intended to suspend Pate's driving privileges.  The following exchange then took place:

MR. ADAMS:   There was never a Court suspension here.   The suspension is under the Administrative License Suspension only, and if Ms. Reising knew the law, she would be able to articulate to you, but she --

THE COURT:  Hold on.

MR. ADAMS:  If she wanted to argue for a public safety suspension, she could have and should have done it early on.  She did not.  Now we're over a year later or so, year and a half, and now she's wanting to punish her?  I mean, even if she was convicted of a DUI, she most

likely wouldn't get more than six months here anyway. So for the Court to impose a punishment at this point in time and she's got a valid license and not let her go back to Atlanta, work, travel to and from the courthouse is being vindictive and not fair.

THE COURT: No, she's not. She's looking out for the public interest.

MR. ADAMS: There's no public interest here.

THE COURT: There is a public interest.

MR. ADAMS: If the public interest was six-months to a three-year suspension -- and we all know in this courthouse -- there was no accident here, there's nothing egregious about this particular DUI. If she pled out, it would be a six-month suspension retroactive from the date of the incident. We're well over a year, over a year and a half. There's no public interest here. It's punitive and it's vindictive here.

THE COURT: Don't you agree that the -- first of all, we'll do like we did in government, that we don't attack the motives of either party.

MR. ADAMS: No, no. Thomas Jefferson said, government is evil. He did say that. Government is evil.

THE COURT: All right. Well, we don't attack the motives of each other. * * *

The trial court then addressed Pate directly and stated that the court would expand her driving privileges, not suspend them. Reising and Adams continued to argue with each other, even memorializing on the record that Reising would not give Adams "any favors, any plea bargains ever again[,]" to which the trial court responded, "All right. That's enough." The hearing adjourned.

3

{¶3}     On August 6, 2013, the trial court conducted an in-chambers meeting with Adams and Reising, on the record, prior to a hearing on the *Pate* case.  The trial court admonished Adams: "I thought that you went pretty far afield in terms of your behavior towards the City, in terms of [--] the Court asked several times -- actually asked you both, but I asked you first not to engage in any kind of personal language towards the City and the case."  Adams responded, "I didn't do that, Judge.  I have the transcript.  I did not do that."  After some further disagreement between the court and Adams regarding Adams's previous conduct, the following occurred:

> THE COURT:  * * * We'll take a look at the transcript and call it back for review of the transcript on that issue, all right?
>
> MR. ADAMS:  What is the issue, Judge?
>
> THE COURT:  Well, the issue is disrespectful behavior to counsel and to the Court.
>
> MR. ADAMS:  Oh, well, I was not disrespectful to the Court.  I was not disrespectful to the prosecutor.
>
> THE COURT:  All right.  Well, that's obviously a question for later on after I see the transcript.  I thought maybe you would have taken the opportunity to apologize to the prosecutor and to the Court.
>
> MR. ADAMS:  No, Judge.  I didn't do anything improper.  The Court on the day that this occurred did not say anything to me that I was improper, did not tell me to stop, did not give me any orders, so I didn't do anything improper, Judge, nothing.

{¶4}     The court journalized an entry in the *Pate* case setting a hearing date for August 23, 2013, on the "conduct" of Adams and Reising.  Adams filed a motion

objecting to the "conduct hearing," arguing that the trial court had no authority to hold such a hearing.

{¶5} The court held the hearing on August 23, 2013, where Adams objected again to the court's authority to hold a "conduct hearing." The court clarified that it was conducting a direct-contempt hearing under R.C. 2705.01. The court then addressed Adams as follows:

> My review of your conduct was that it was, in addition to being overly aggressive, very loud, aggressive towards the city prosecutor in such a way that it stimulated a -- I think what I would call an overreaction [by Reising] at the end of the hearing in defense of herself. I was actually shocked by your behavior, by how loud and aggressive you were.
>
> I was here in the courtroom so I could -- I could sense it. It was my courtroom. I had the impression that the level of tension was raised much, much higher than it ought to have been by you. I believe there was a lack of civility on your part, and I didn't understand it.
>
> * * *
>
> I've reviewed the transcript. One of the things that the transcript can't capture -- although there are words there, the transcript can't capture the tone, aggressiveness, attitude.

{¶6} The court then entered an order finding Adams in direct contempt under R.C. 2705.01, and imposing a sentence of 30 days in jail and a $250 fine. The court determined that Adams could "purge" the contempt by apologizing to the court and to Reising by September 23, 2013.

{¶7}   Adams now appeals the trial court's contempt order, which the trial court stayed pending appeal.

## Appealability of Contempt Order

{¶8}   R.C. 2705.09 provides for the appealability of contempt orders. Courts have held that in order for a contempt order to be final and appealable, it must include both a finding of contempt and the imposition of a penalty or sanction. *State ex rel. Doe v. Tracy*, 51 Ohio App.3d 198, 555 N.E.2d 674 (12th Dist.1988); *Kahles v. Luken*, 1st Dist. Hamilton No. C-780675, 1979 Ohio App. LEXIS 9524, *5 (Dec. 12, 1979). Thus, as a general matter, where a contempt order gives the contemnor an opportunity to purge the contempt, no final, appealable order exists. *Carroll Cty. Bur. of Support v. Brill*, 7th Dist. Carroll No. 05 CA 818, 2005-Ohio-6788, ¶ 22, citing *Davis v. Davis*, 11th Dist. Geauga No. 2004-G-2572, 2004-Ohio-4390, ¶ 6.

{¶9}   Purge conditions in contempt orders generally seek to coerce compliance with a court order. *See, e.g.*, *McRae v. McRae*, 1st Dist. Hamilton No. C-110743, 2012-Ohio-2463, ¶ 6. In this case, the trial court determined that Adams could "purge" his contempt by issuing an apology. The purge condition—the apology—did not seek compliance with a court order, but was more akin to a punishment. Moreover, Adams can no longer comply with the purge condition because it expired on September 23, 2013. Therefore, we determine that the contempt order in this instance is a final, appealable order, despite the inclusion of a "purge" condition.

**Direct Criminal Contempt**

{¶10} We turn now to the merits of Adams's appeal, in which Adams raises in a single assignment of error that the trial court abused its discretion in finding Adams in direct contempt under R.C. 2705.01. As recognized by Adams's assignment of error, a determination of contempt by a trial court is reviewed for an abuse of discretion. *State v. Kilbane*, 61 Ohio St.2d 201, 400 N.E.2d 386 (1980), paragraph one of the syllabus. An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶11} R.C. 2705.01 allows a court to "summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice[,]" also known as direct contempt. *In re Thomas*, 1st Dist. Hamilton No. C-030429, 2004-Ohio-373, ¶ 4. By contrast, indirect contempt involves acts occurring outside the presence of the court. *Id.*

{¶12} Two conditions must be met before a court may summarily punish a person for contempt: (1) the trial court "must have personal knowledge of the disruptive conduct 'acquired by his own observation of the contemptuous conduct.' " *State v. Stegall*, 1st Dist. Hamilton Nos. C-110767, C-120112 and C-120113, 2012-Ohio-3792, ¶ 40, quoting *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948); and (2) "the conduct must pose 'an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public' that, if 'not instantly suppressed and punished, demoralization of the court's authority will follow.' " *Stegall* at ¶ 40, quoting *In re Oliver* at 275.

{¶13} In addition to the distinction in contempt proceedings between direct and indirect, contempt proceedings can be either civil or criminal, depending on the purpose of the sanction. *Kilbane*, 61 Ohio St.2d at 205, 400 N.E.2d 386. Civil contempt proceedings seek to coerce the contemnor into complying with a lawful court order; by contrast, criminal contempt proceedings seek to vindicate the court's authority and to punish the contemnor. *Id.* at 204-205. Generally, a criminal contempt sanction consists of an unconditional punishment; however, not every conditional sanction is civil. *In re Thomas*, 1st Dist. Hamilton No. C-030429, 2004-Ohio-373, at ¶ 5; *Kilbane*, 61 Ohio St.2d at 205-206, 400 N.E.2d 386.

{¶14} Although the trial court conditioned Adams's jail sentence and fine on whether he apologized, the purpose of the sanction was not to coerce Adams to comply with a court order, but to punish Adams for prior conduct. Therefore, although the trial court stated that Adams could "purge" the contempt by apologizing, the contempt proceedings against Adams were criminal in nature. Criminal contempt proceedings require proof of guilt beyond a reasonable doubt. *In re Thomas*, 1st Dist. Hamilton No. C-030429, 2004-Ohio-373, at ¶ 5, citing *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980).

{¶15} In his appeal, Adams argues that the trial court abused its discretion in concluding, beyond a reasonable doubt, that Adams's conduct constituted misbehavior that obstructed justice and required immediate punishment. While we agree that this conduct does not constitute direct criminal contempt beyond a reasonable doubt, this court does not condone uncivil, discourteous behavior.

{¶16} In this case, Adams did not display exemplary conduct befitting an officer of the court; however, Adams's conduct did not constitute an immediate

threat to the administration of justice. *See In re LoDico*, 5th Dist. Stark No. 2003-CA-00446, 2005-Ohio-172, ¶ 73, quoting *State v. Conliff*, 61 Ohio App.2d 185, 190, 401 N.E.2d 469 (10th Dist.1978) (determining that counsel's "unwise, insolent and probably personally insulting" conduct did not rise to the level of direct contempt); *see also In re Brannon*, 2d Dist. Montgomery No. 19619, 2003-Ohio-4423, ¶ 98 (determining that counsel's interruption of opposing counsel on two occasions and request that the trial judge "hold her voice down" did not amount to contemptuous conduct because the remarks "presented no actual or imminent threat to the administration of justice."); *State v. Schiewe*, 110 Ohio App.3d 170, 673 N.E.2d 941, 943 (6th Dist.1996).

{¶17} Therefore, because the record does not affirmatively demonstrate that Adams's conduct constituted direct criminal contempt beyond a reasonable doubt, we conclude that the trial court abused its discretion in entering its contempt order against Adams.

## Conclusion

{¶18} In conclusion, we sustain Adams's assignment of error, and we vacate the trial court's order holding Adams in contempt.

Judgment vacated.

**HILDEBRANDT, P.J., DINKELACKER** and **FISCHER, JJ.**

Please note:
    The court has recorded its own entry on the date of the release of this opinion.