[Cite as *In re E.M.*, 2022-Ohio-2091.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY

IN RE:                                            CASE NO. 5-21-35

    E.M.,

ABUSED, NEGLECTED
AND DEPENDENT CHILD.

[ASHLEY D. - APPELLANT]                            **O P I N I O N**
[AADAM D. - APPELLANT]

Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 20203090

Judgment Affirmed

Date of Decision:  June 21, 2022

APPEARANCES:

    *Jeffrey P. Nunnari* for Appellants

    *Kathryn E. Fort* for Appellee, Suquamish Tribe

    *Justin J. Kahle* for Appellee, Hancock County CPSU

**WILLAMOWSKI, J.**

{¶1} Appellants Aadam and Ashley D. ("Appellants") bring this appeal from the judgment of the Court of Common Pleas of Hancock County, Juvenile Division denying their motion to intervene and dismissing their complaint for custody. For the reasons set forth below, the judgment is affirmed.

{¶2} On November 23, 2020, Hancock County Children's Services ("the Agency") filed a complaint alleging that on November 20, 2020, Destiny gave birth to E.M. who tested positive for drugs and alleging that E.M. was an abused, neglected, and dependent child. Doc. 1. The complaint also noted that Destiny was a member of the Suquamish Indian Tribe ("the Tribe"). Doc. 1. A hearing was held on November 24, 2020, granting emergency temporary custody of E.M. to the Agency. Doc. 6. The trial court noted that E.M. "is of Native American descent and [the Agency] has notified the tribe." Doc. 6 at 2. A hearing of adjudication was scheduled for February 11, 2021. Doc. 12. On January 15, 2021, the Tribe filed a notice of designation of tribal representative and notice to intervene noting that E.M. is an "Indian Child" as defined by the Indian Child Welfare Act of 1978 ("ICWA"). Doc. 17. Following the adjudication hearing, the trial court found that the parties were in agreement that E.M. was an abused, neglected, and dependent child. Doc. 23. The trial court also noted that all parties were aware of the fact that E.M. is an Indian Child pursuant to the ICWA. Doc. 23. At that time, the Tribe had not

requested a transfer of the case, but had indicated that one could be coming. Doc. 23.

{¶3} On February 23, 2021, the Tribe filed a motion to transfer jurisdiction to the tribal court. Doc. 26. That same day, the hearing for disposition was held. Doc. 29. Due to Destiny objecting to the transfer of jurisdiction at that time, the Tribe withdrew their motion. Doc. 29. The trial court ordered that E.M. be placed in the temporary custody of the Agency. Doc. 29. On May 25, 2021, the Agency filed its case review indicating that the permanency goal was reunification. Doc. 30. On July 29, 2021, Aadam filed a motion to intervene in the case and a complaint for legal custody. Doc. 31, 32, and 34. These pleadings did not list Ashley on them. Appellants subsequently attempted to bring Ashley into the pleadings as well. Doc. 35 and 51.

{¶4} On September 16, 2021, the Agency filed a motion for a six-month extension. Doc. 38. The motion indicated that Destiny had made no progress on the case plan and that the Tribe was working on finding a placement for after the change of jurisdiction. Doc. 38. The Agency also noted that a home study process had begun for a relative in the Tribe and the Agency was waiting for the outcome of the referral. Doc. 38. Destiny had indicated that she was withdrawing her objection to the Tribe's motion to transfer jurisdiction. Doc. 38. On September 21, 2021, the Tribe filed a new motion for an order to transfer jurisdiction to the tribal

court.  Doc. 40.  This motion indicated that a suitable relative placement had been found and that Destiny was in agreement with this placement.  Doc. 40.

{¶5} On October 7, 2021, the trial court held a hearing on the motion to intervene, the motion to transfer jurisdiction, and the complaint for legal custody. Doc. 50.  Appellants, the Tribe, and the Agency all filed briefs after the hearing in support of their respective arguments.  On November 19, 2021, the trial court entered its judgment entry, which denied Appellants' motion to intervene, denied and dismissed the remaining motions as filed by a nonparty, granted the motion to transfer the case to the Tribe, and granted the Agency's motion for an extension. Doc. 66.  The extension was necessary to allow time for arrangements to be made to transfer E.M. to the custody of the Tribe.  Doc. 66.  Appellants filed a notice of appeal on November 23, 2021.  Doc. 68.  On appeal, Appellants raise the following assignments of error.

### First Assignment of Error

**The trial court erred to the prejudice of [Appellants] by dismissing their complaint for custody and relinquishing jurisdiction over the child to [the Tribe] before taking evidence on what is in the child's best interests.**

### Second Assignment of Error

**The trial court abused its discretion and erred to the prejudice of [Appellants] by denying them party status.**

**Third Assignment of Error**

**The trial court erred by relinquishing jurisdiction over the child to [the Tribe] before making a determination that doing so is in the child's best interests.**

**Fourth Assignment of Error**

**The [ICWA] impermissibly intrudes upon the court's function of *parens patriae* and violates equal protection.**

In the interest of clarity, we will address the assignments of error out of order.

*Motion to Intervene*

{¶6} In the second assignment of error, Appellants claim that the trial court erred by denying their motion to intervene. Initially, this Court notes that foster parents, although having a limited right to notice of hearings and a limited right to be heard, are not parties to proceedings regarding the children. R.C. 2151.424. A party to a juvenile case is defined as "a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court. Juv.R. 2(Y). Foster parents by definition are not parties, but they may be added as a party if the court so chooses. Civ.R. 24(B). "Foster parents and kinship providers have no constitutional, statutory or common law right to intervene as a party in juvenile custody proceedings." *In re R.R.*, 4th Dist. Athens No. 17CA21, 2017-Ohio-8928, ¶ 16, 88 N.E.3d 969. Foster parents

-5-

"have no legally enforceable right to intervene and participate as parties in [a] custody action." *In re Smith*, 3d Dist. Allen No. 1-93-74, 1994 WL 49936, *1.

{¶7} Permissive intervention is permitted in an action "(1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Civ.R. 24(B). We review the ruling of a trial court on a motion to intervene pursuant to Civ.R. 24(B) using an abuse of discretion standard. *In re T.H.*, 5th Dist. Muskingum No. 2016-0008, 2016-Ohio-7310, ¶ 25 and *In re R.W.*, 8th Dist. Cuyahoga No. 101742, 2015-Ohio-1031, ¶ 13. "A court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner." *R.W. supra* at ¶ 16. The decision whether to allow intervention by a foster parent is based upon the best interest of the children, while also recognizing that foster parents have limited rights regarding the children in their care. *Id*. at ¶ 17. Foster parents "care for a dependent or neglected child only as agents for the state, who is the child's permanent or temporary legal custodian." *Id*. quoting *In re J.B.,* 8th Dist. Cuyahoga No. 96652, 2011-Ohio-4830, ¶ 10 citing *Smith, supra.*

{¶8} Appellants claim that they are entitled to intervene because they acted in loco parentis to E.M. by exercising "significant parental control over, and assumed parental duties for the benefit of E.M." Appellant's brief at 15. "A person in loco parentis has assumed the same duties as a guardian or custodian, only not through a legal proceeding." *State v. Noggle*, 67 Ohio St.3d 31, 33, 1993-Ohio-189,

615 N.E.2d 1040 (superseded by statute on other grounds) and *In re A.T.*, 3d Dist. Crawford Nos. 3-19-07, 3-19-08, 3-19-09, 2019-Ohio-5038, ¶ 16 (holding that loco parentis applies when parties act as parents in the absence of formal legal approval).

{¶9} The nature of a foster parent relationship to the child is meant to be temporary.

> **While this court recognizes the strong emotional bond that might evolve in a foster care situation, we hesitate to characterize this relationship as a constitutionally protected liberty interest. * * ***
>
> **Under Ohio law, the rights and limitations of the foster care relationship are clearly defined. Foster parents have no mechanism to challenge the removal of a foster child from their care; they have no statutory right to a hearing either before or after the child has been removed; nor are they entitled to a written explanation for the agency's actions or an appeal. * * * The temporary nature of the foster care relationship provides sufficient notice to all participants that their rights are limited.**

*Renfro v. Cuyahoga Cty. Dept. of Human Serv.* (C.A. 6, 1989), 884 F.2d 943, 944. The actions of Appellants in this case all arose from a legal proceeding, i.e. the adjudication of E.M. as abused, neglected, and dependent which resulted in the Agency placing E.M. with Appellants as foster parents. The actions of Appellants, while assuredly done with a desire to care for the child, are what is required of all foster parents pursuant to Ohio law. See OAC 5101: 2-7. Given this evidence, the trial court did not abuse its discretion in finding that Appellants were acting as foster parents, not in loco parentis. Thus, the trial court did not abuse its discretion in denying the motion to intervene. The second assignment of error is overruled.

*Transfer of Jurisdiction*

{¶10} Appellants claim in the third assignment of error that the trial court erred by transferring jurisdiction to the tribe without holding a hearing on the best interest of the child first. The Ohio Administrative Code sets up procedures for the transfer of Indian Children to a tribal court.

> **(A) Either parent, the Indian custodian, or the Indian child's tribe may request, at any time, orally on the record or in writing, that the court transfer a foster care or termination of parental rights proceeding to the jurisdiction of the child's tribe. The right to request a transfer is available at any stage in each foster care or termination of parental rights proceeding.**
>
> **(B) Upon receipt of a transfer petition, the court must promptly notify the tribal court in writing of the transfer petition and may request a timely response regarding whether the tribal court wishes to decline the transfer. The court *must* transfer the child custody proceeding unless it determines that transfer is not appropriate because one or more of the following criteria are met:**
>
> **(1) Either parent objects to the transfer;**
>
> **(2) The tribal court declines the transfer; or**
>
> **(3) Good cause exists for denying the transfer.**
>
> **(C) If the public children services agency (PCSA) or private child placing agency (PCPA) asserts that good cause exists for the court to deny transfer, the agency shall state the reasons orally on the record or provide them in writing on the record and to the parties to the child custody proceeding. In determining whether good cause to deny transfer exists, the court *must not consider*:**
>
> **\* \* \***
>
> **(3) *Whether transfer could affect the placement of the child*[.]**

OAC 5101:2-53-09 (emphasis added). Pursuant to Ohio law, the trial court has no option but to approve the transfer if both the parent and the tribe agree unless good cause is shown as to why it should not be permitted. The rule provides that good cause can be alleged by the Agency and does not mention third parties, such as foster parents. The Agency in this case joined with the Tribe and Destiny in requesting the transfer. Thus, the Agency did not assert that there was good cause for the trial court to deny the transfer.

{¶11} Even assuming that foster parents could object, the objection in this case is that it would result in a change of placement of E.M. Appellants argue that this change would not be in E.M.'s best interest. The code specifically provides that the trial court may not consider how the transfer would affect the placement of the child as grounds for "good cause" to deny the transfer. The record contains no evidence outside of the change of placement for the trial court to consider as "good cause" to deny the transfer, which the rule bars from consideration. Thus, the trial court did not err in granting the transfer. The third assignment of error is overruled.

*Denial of Complaint for Custody*

{¶12} In the first assignment of error, Appellants allege that the trial court erred by dismissing their complaint for legal custody without considering the best interest of the child. Appellants filed a complaint for legal custody pursuant to R.C. 2151.353(A)(3) which states as follows:

**(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:**

**\* \* \***

**(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.**

R.C. 2151.353.[1]   A review of the hearing shows that when Appellants were presented with the opportunity to present their case, they presented no evidence, instead stating that legal custody was a question of law and asking to be permitted to brief the issues.  Tr. 14.  Appellants merely argued that since E.M. had resided with them since entering foster care, it would be best for him to remain with them.  Doc. 57.  Their brief submitted to the trial court contains no information outside the change of placement as to why it would be better for custody of E.M. be granted to them.  Doc. 57.

{¶13} At the hearing, statements[2] were made by the representative of the Tribe that E.M., while not being placed in the same home with his older siblings, would be placed in the same extended family who live within five minutes of his siblings.  Tr. 12.  Additionally, he would be attending the same schools as his sisters

---

[1] This case is different than most because it is a foster family filing a motion for legal custody after less than six months from initial adjudication and in opposition to the position of the Agency and the mother.
[2] The representative was not placed under oath, but was there to answer questions.  She answered questions from the trial court and counsel for Appellants.

and the same family functions. Tr. 12. The family was described as very large and very close. Tr. 12. Pursuant to the Ohio Administrative Code, the placement preference of Indian children is with a member of the Indian child's extended family, preferably one near extended family or siblings. OAC 5101:2-53-08. If an Indian child is being placed for a permanent placement, priority is given to members of the child's extended family followed by other members of the child's tribe. OAC 5101:2-53-08(E). The placement of an Indian child is not permitted to depart from these placement preferences based upon the ordinary bonding or attachment that comes from other placements that are made outside of the ICWA. OAC 5101:2-53-08(J). These rules are in accord with Ohio's statutory preference to place children with suitable extended family members when possible before placing with nonrelatives. R.C. 2151.412(H).

{¶14} Here, Appellants claim that the trial court erred in dismissing their complaint for legal custody without first considering the best interest of the child. A review of the record shows that Appellants did not offer any evidence regarding their complaint for legal custody. Instead, they focused on a legal argument that E.M. should stay with them because they had provided his care for the majority of his life as his foster parents. However, they offered no testimony to back this up despite the fact that the complaint for legal custody was one of the reasons for the hearing. The brief presented to the trial court following the hearing did not address the complaint for legal custody, instead focusing on the right to intervene and the

transfer of jurisdiction. Since Appellants did not present any evidence in support of their complaint for legal custody, we cannot say that the trial court erred in dismissing it.

{¶15} Even if the trial court did err, any error would be harmless. Appellants were not barred from filing a complaint for legal custody in the tribal court, which would assume the jurisdiction. Additionally, the result of the transfer was to place the child with extended family near his siblings. This is the preference of Ohio law. The Agency noted in its case study review filed November 5, 2021 that the Tribe had reported that a maternal aunt of E.M. had been approved for placement. Doc. 64 at 5. The Agency noted that it had "completed ICPC referral for the family as well in the case that transfer of jurisdiction is not granted." Doc. 64 at 5. The Agency was already planning on moving the child from Appellants' home for a relative placement even if the jurisdiction was not transferred. As there was no prejudicial error, the first assignment of error is overruled.

*Indian Child Welfare Act*

{¶16} Appellants allege in the fourth assignment of error that the ICWA is unconstitutional and the transfer should not have been allowed. As this court has already determined in the second assignment of error that the trial court did not err in denying Appellants' motion to intervene, they are not parties to the case. As nonparties, they lack standing to challenge on appeal the constitutionality of the

-12-

ICWA. For this reason, the fourth assignment of error is rendered moot and will not be addressed.

{¶17} Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgment of the Court of Common Pleas of Hancock County, Juvenile Division is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/hls**