[Cite as *Price v. Price*, 2024-Ohio-5253.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

DANA R. PRICE,

    PLAINTIFF-APPELLEE,               CASE NO. 8-24-06

    v.

LAWRENCE E. PRICE,

    DEFENDANT-APPELLEE.          O P I N I O N

[TIM STEINHELFER - APPELLANT]

---

**Appeal from Logan County Common Pleas Court**
**Family Court Division**
**Trial Court No. DR23-05-0040**

**Judgment Reversed**

**Date of Decision: November 4, 2024**

---

**APPEARANCES:**

    *Tim Steinhelfer,* **Appellant**

**WILLAMOWSKI, P.J.**

{¶1} Appellant Tim Steinhelfer ("Appellant") brings this appeal from the judgment of the Common Pleas Court of Logan County, Family Court Division finding him guilty of direct criminal contempt of court. On appeal, Appellant claims that the trial court erred by finding him to be in contempt of court. For the reasons set forth below, the judgment is reversed and vacated.

{¶2} This case arises from a divorce filed in the trial court. Appellant represented the defendant in that case. Throughout the proceedings, numerous pretrial motions were filed by plaintiff's counsel and granted by the magistrate. These motions resulted in temporary orders issued by the magistrate granting plaintiff spousal support, exclusive use of the home, and a $20,000 deposit to cover attorney fees in favor of plaintiff.[1] Appellant filed motions to set aside these judgments. These motions were denied by the trial court.

{¶3} On December 19, 2023, a pretrial hearing was held before the magistrate. At some point in time, Appellant "demanded" that they go on the record. During the hearing, the following dialogue occurred.

> The Court: This was not set for necessarily an on-the record pretrial; however, Mr. Steinhelfer has demanded, in fact, instructed the Court on how the Court will conduct business today and has instructed the Court that we will go on the record.

---

[1] No request for attorney fees was made in the pretrial motion filed by the plaintiff.

So for purposes of preserving any further issue with Mr. Steinhelfer and his incredible disrespect and disregard for this Court's authority, we will go on the record.

We will also have a security officer present to ensure that if Mr. Steinhelfer takes one further step over the line that he has already crossed, both in writing and verbally, before this Court today prior to going onto the record, the officer will immediately place him in handcuffs and allow Mr. Steinhelfer to spend the rest of his day in the jailhouse.

Is that understood, Mr. Steinhelfer?

Mr. Steinhelfer:  It is.  Certainly, um - -

The Court:  Do you wish to take any further steps over the line of what is appropriate in this courtroom?

Mr. Steinhelfer:  I'm not going to ever take any steps over the line of what's appropriate.

The Court:  That was a yes or no question, sir.  Do you wish to take any further steps over the line?

Mr. Steinhelfer:  I think I answered your question.  It was a no.

The Court:  It's a yes or no question.  So it requires a yes or a no, and that is the only thing you will say from here on.

Mr. Steinhelfer:  The answer was - -

The Court:  Yes or no, sir?

Mr. Steinhelfer:  - - a no.  The answer was a no.

The Court:  Thank you.

From now on, do not speak unless I ask you to speak.

Tr. 2-3. The magistrate then addressed some issues with plaintiff's counsel before turning back to Appellant. Appellant asked for clarification as to the order that his client write a check for $20,000 to make funds available to the plaintiff for attorney fees and proceeded to make arguments, which included some which had previously been made in the motions to set aside the judgment and were denied by the trial court. Following the argument, the following dialogue occurred.

> The Court: Well, that's wonderful, sir. And you have certainly had an opportunity to argue your case in writing. You have been denied by this Court, not only by myself, but also by the reviewing judge on two occasions.[2]
>
> So I think that your insistence to continue to come in here and make those accusations in this courtroom, accuse this Court of violating due process, accuse this Court of violating its own Local Rules, accuse this Court of abusing your client through this process is disrespectful to the Court, not to mention the fact that everything else that you've stated is basically disingenuous and argumentative without any evidence that has been presented.
>
> So, um, you have had a hearing. You've had an opportunity to request a hearing. The temporary orders have been set. They've been issued.
>
> You can preserve your arguments for appeal, and you're certainly welcome to do that, and that's well within your discretion and your client's discretion to do that, but when you are in this courtroom, you will treat this Court with respect, and you will talk to me respectfully or you will not practice in this courtroom.
>
> Mr. Steinhelfer: That's not for you to decide.
>
> The Court: Well, I think that that's questionable depending on the circumstances. It is for me to decide what is respectful and what is

---

[2] There had been two prior rulings by the magistrate that Appellant had filed motions to set aside the orders. The matters were heard by the trial judge and were overruled.

not respectful. And you are being disrespectful, and you're being argumentative.

Mr. Steinhelfer: I'm just creating a record for my client. We all know what track this case is on.

The Court: Would you like to apologize for your behavior before this Court?

Mr. Steinhelfer: Which part of it?

The Court: The way that you have been speaking to me throughout this proceeding and prior to the hearing beginning.

Mr. Steinhelfer: If you felt there was a tone, I apologize for that. Nothing in the substance of what I said was disrespectful. I'm entitled to advocate for my client, and I did not cross a line.

The Court: You're entitled to advocate in (sic) your client in the way that the Procedural Rules allow you to advocate, and you were stepping over those lines.

Mr. Steinhelfer: We'll see about that.

The Court: Deputy, will you place handcuffs on Mr. Steinhelfer and remove him to the office.

Tr. 10-12. Later, Appellant was returned to the courtroom where the magistrate notified him that she was summarily finding him to be in contempt of court and that he was required to give the "proper respect" due to judicial officers. The magistrate issued her order of direct contempt on January 8, 2024. The basis for the finding of contempt was the magistrate's determination that Appellant had violated the Ohio Rules of Professional Conduct and that his behavior was disrespectful to the court.

{¶4} On February 6, 2024, Appellant filed a motion to vacate the finding of direct contempt and attached a video recording of the proceedings. The trial court subsequently denied the motion to vacate, finding that the magistrate acted within her inherent power and her decision to remove counsel in handcuffs allowed counsel time to "calm down". Appellant appeals from this judgment and on appeal alleges the following:

> **The court below abused its discretion in finding Appellant in direct criminal contempt.**

{¶5} Here, the judgment of the trial court indicates that Appellant was found in direct criminal contempt of the trial court. Contempt of court is a disregard of or disobedience to the orders or commands of a court. *Roberts v. Farrell*, 2023-Ohio-1109 (3d Dist.). "Direct contempt occurs in the presence of the court in its judicial function." *Fidler v. Fidler*, 2008-Ohio-4688, ¶ 11 (10th Dist.). "Criminal contempt sanctions are not coercive in nature, but act as 'punishment for the completed act of disobedience, and to vindicate the authority of the law and the court.'" *Heinrichs v. 356 Registry, Inc.,* 2016-Ohio-4646, ¶ 54 (10th Dist.). Direct criminal contempt is an act of misbehavior in the presence of the court that obstructs the administration of justice. *In re Lodico*, 2005-Ohio-172 (5th Dist.). "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus.

{¶6} If a court finds one to be in direct criminal contempt, a court may summarily punish the guilty party. R.C. 2705.01. The United States Supreme Court has defined summary contempt as "a procedure which dispenses with the formality, delay and digression that would result from the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial." *Sacher v. United States*, 343 U.S. 1, 9 (1952). "The invocation of the court's summary power for direct contempt is an awesome power that the court must be cautious in using [that] should be restricted to activity that threatens the integrity or the very functioning of the judicial process." *City of Cincinnati v. Dist. Council 51*, 35 Ohio St.2d 197 (1973). Before a court may exercise its summary power for direct criminal contempt of court, two conditions must be met. *State v. Adams*, 2014-Ohio-2728 (1st Dist.). First, the trial court must have observed the disruptive conduct. *Id*. Second, the conduct must present a threat to the orderly court proceedings and be such a brazen defiance of the judge before the public that "if not instantly suppressed and punished, demoralization of the court's authority will follow." *Id*. at ¶ 13 quoting *In re Oliver*, 333 U.S. 257, 275 (1948). If both of these conditions are not met, the summary sanction is not justified and a hearing must be held to protect the due process rights of the contemnor. *In re Chambers*, 2019-Ohio-3596, ¶ 26 (1st Dist.). The contempt authority is generally limited to the least possible power needed to end the disrupting misconduct. *State v. Dean*, 2007-Ohio-

1031 (2d Dist.) citing *Cooke v. United States,* 267 U.S. 517 (1925). "The reason for authorizing the court to summarily punish direct contempt without the necessity of notice and an opportunity to be heard is that unless such an open threat to the orderly procedure of the court is not instantly suppressed and punished, demoralization of the court's authority may follow." *State v. Conliff* 61 Ohio App.2d 185, 188 (10th Dist. 1978).

{¶7} The standard of review for a contempt finding is whether the trial court abused its discretion. *Lodico,* 2005-Ohio-172 at ¶ 40. An abuse of discretion occurs when the trial court's attitude is unreasonable, arbitrary, or unconscionable. *In re E.M.*, 2022-Ohio-2091, ¶ 7 (3d Dist.). Although a finding of criminal contempt is within the discretion of the trial court, "to sustain a conviction of criminal contempt the elements of the offense must be proven beyond a reasonable doubt." *Lodico* at ¶ 39. "To constitute contempt, the alleged misbehavior must require immediate punishment to preserve the court's authority, take place in the presence of the judge and obstruct the administration of justice by delaying, hindering or influencing a pending case." *State v. Schiewe*, 110 Ohio App.3d 170, 173 (6th Dist. 1996). "[T]o uphold a contempt, the record must affirmatively show that the conduct constituted an imminent threat to the administration of justice." *Id.* The appellate court reviewing the conviction does not presume, in the absence of evidence to the contrary, that the trial court's actions were correct. *Id.*

{¶8} Numerous courts have reviewed whether various behavior is sufficient to constitute contempt of court. In *Adams,* 2014-Ohio-2728, a defense attorney was found in direct contempt of court based upon his conduct at a hearing for his client's DUI. During a hearing, the contemnor accused the prosecutor of not knowing the law and acting vindictively. A week later, at a pretrial hearing the trial court scolded the contemnor on the record and indicated that the contemnor had engaged in "disrespectful behavior to counsel and to the Court." *Id*. at ¶ 4. The trial court then set a hearing date on the conduct of the contemnor. At the hearing, the trial court stated as follows:

> My review of your conduct was that it was in addition to being overly aggressive, very loud, aggressive towards the city prosecutor in such a way that it stimulated a – I think what I would call an overreaction [by counsel] at the end of the hearing in defense of herself. I was actually shocked by your behavior, by how loud and aggressive you were.
>
> I was here in the courtroom so I could – I could sense it. It was my courtroom. I had the impression that the level of tension was raised much, much higher than it ought to have been by you. I believe there was a lack of civility on your part, and I didn't understand it.

*Id*. at ¶ 6. The trial court then found the contemnor in direct contempt. On appeal, the First District Court of Appeals held that although the contemnor "did not display exemplary conduct befitting an officer of the court; [contemnor's] conduct did not constitute an immediate threat to the administration of justice. *Id*. at ¶ 17. The Court found that the record did not affirmatively demonstrate that direct criminal contempt occurred beyond a reasonable doubt and vacated the trial court's order.

{¶9} In *Schiewe,* 110 Ohio App.3d 170, the trial court issued an order prohibiting repetitious and cumulative testimony of police officers who had interviewed the defendant. The prosecutor apparently continued to ask similar questions of multiple officers. The trial court then found that the prosecutor had intentionally violated the order and found the prosecutor to be in contempt of court. On appeal, the Sixth District Court of Appeals found that the prosecutor had a professional responsibility to present sufficient evidence. The order of the court "prohibiting 'repetitious testimony' placed [the prosecutor] in an untenable position" of having to choose between presenting the best case for his client as is his professional responsibility or to obey the trial court's order. *Id*. at 177. The Court held that "an attorney should not be required to violate his duty to his client as the price of avoiding punishment of contempt." *Id*. The Court then reversed the judgment.

{¶10} In *Lodico,* 2005-Ohio-172, counsel was found in contempt of court for statements he made during his representation of criminal defendants. During a hearing, the trial court and one of the defendants were discussing whether counsel still represented him. The trial court asked counsel if he was still representing the defendant, and the following dialogue occurred.

> Mr. Lodico: No sir. He's got to get another lawyer; in other words, I don't know what's going on. I was told just to shut up a few minutes ago, so I'm going to keep my mouth shut.

> The Court: I asked you a question.

Mr. Lodico:  And I told the Court I have no clue what's going on.

The Court:  Are you representing this man?

Mr. Lodico:  I haven't been retained by this man.

The Court:  Answer the question.  Are you representing him or are you not representing him?

Mr. Lodico:  I'm not representing him.

\* \* \*

The Court:  Because Mr. Lodico, are you officially withdrawing from this case Mr. Lodico?

Mr. Lodico:  I'm saying that I can't be effective in representing [the defendant].  So however the Court wants to view that, the Court can view that.

The Court:  Mr. Lodico, you have just stepped over the line of insubordination, insolent, rudeness and overreacting, and I find you in contempt of court.

*Id*. at ¶ 9-22.  On appeal, the Fifth District Court of Appeals held that trial judges "must be careful to guard against confusing actions or words which are contemptuous to the judge's personal feelings or sensibilities and actions or words which constitute punishable, criminal contempt of a summary nature because of posing an actual or imminent threat to the administration of justice."  *Id*. at 47. "Trial courts . . .  must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown v. United States*, 356 U.S.

148, 153 (1958). The Court then reversed the judgment and vacated the finding of contempt.

{¶11} The Eighth District Court of Appeals also dealt with a contentious exchange between the trial court and counsel in *In re Gonzalez*, 2003-Ohio-1960 (8th Dist.). In *Gonzalez*, the following dialogue occurred.

> Court: He can sign it or I can hold him until he signs it, your choice.
>
> Appellant: We'll sign it over objection, and I would like that on the record also.
>
> Court: And it is on it.
>
> Court: Don't write on that. Don't you dare write on that. If you write on there, I'm going to hold you in contempt. He can sign it or he can stay, your choice Mr. Gonzalez. But you're not writing on the order. You don't write on other orders of the Court and you don't write on this one. Did you understand?
>
> Appellant: I understand, your Honor. Your Honor –
>
> Court: That's as far as you get. One more word – sign it.
>
> Appellant: I'll get my client to sign it. Yes, your honor.
>
> Court: I have nothing to say, that's right.
>
> Appellant: I thought we were still in America, apparently we're not.
>
> Court: All right, now you're in contempt.

*Id*. at ¶ 17-31. The Court reversed the judgment holding that "[a]lthough the conduct of counsel was arguably improper, it did not pose an imminent threat to the

administration of justice sufficient to warrant a finding of direct contempt." *Id*. at 52.

{¶12} In *In re Brannon*, 2003-Ohio-4423 (2d Dist.), defense counsel was held in contempt of court for twice interrupting the prosecutor, expressing disagreement with the trial judge's ruling and requesting that the judge hold her voice down when the judge spoke loudly while admonishing the attorneys to stop bickering.

> The Court: Ladies, gentlemen, I'm not going to listen to you bicker. I will not put up with this conduct from either of you throughout this case, or one or both of you is going to the county jail.
>
> Mr. Brannon: Would you hold your voice down, Judge.
>
> The Court: Mr. Brannon, you do not tell me to hold my voice down. This is my courtroom.

*Id*. at ¶ 15-17. The Court determined that although the trial court may have been offended by Brannon's comment, it presented no threat to the administration of justice and it did not rise to the level of contemptuous conduct.

{¶13} In *Camburn v. Camburn*, 2005-Ohio-6502 (10th Dist.), counsel for the defendant was found to be in contempt of court for not following a trial court's order to stop talking. The day before the incident, counsel had attempted to make a proffer of evidence, but due to the late time, the trial court instructed counsel she could make the proffer at 8:00 the next morning. At 8:00 a.m., counsel attempted to make her proffer on the record when the bailiff told her to stop talking because the judge

wanted to speak. Counsel continued to make her proffer. The judge then told counsel "this is not your opportunity to speak." *Id.* at ¶ 4. When counsel indicated that she wished to continue to make her proffer, the trial court went off the record. Upon returning to the record, the trial court found counsel to be in contempt of court. Counsel appealed to the Tenth District Court of Appeals. On appeal, the Court found that the trial court had abused its discretion because there was no actual or imminent threat to the administration of justice. The Court noted that any doubts as to whether conduct constitute vigorous advocacy and actual obstruction should be resolved in favor of advocacy. *Id.* at ¶ 15 quoting *In re Contempt of Greenburg*, 849 F.2d 1251, 1255 (9th Cir. 1988) (holding that counsel's loud voice, failure to obey court's order to sit down, and slamming of his hand on the table does not pose an immediate threat to the judicial process). The Court held that counsel's conduct in this case, although possibly ill-advised, did not cross the line from vigorous advocacy to disrupting the proceedings.

{¶14} Recently, the Supreme Court of Ohio has also addressed questions of contempt in cases where magistrates and judges have had disciplinary proceedings started due to findings of contempt. In *Disciplinary Counsel v. Bachman*, 2020-Ohio-6732, a magistrate was holding a trial when it was disrupted by a woman screaming in the hallway. Bachman left the bench to have the woman brought into the courtroom, where she was summarily held in direct contempt and sentenced to three days in jail. When the woman protested, the sentence was increased to ten

days. A complaint was filed with the disciplinary counsel who found that Bachman had engaged in the charged misconduct and recommended a six-month suspension, fully stayed. The Court when it reviewed the matter adopted the findings of misconduct and the six-month suspension, but declined to stay it.[3] In reaching its conclusion, the Court held that while the scream may have interrupted the trial, "it was a far cry from *obstructing* the trial." *Id*. at 24 (emphasis in original). "The record must demonstrate that the contemnor had an intent to obstruct the administration of justice or disobey an order of the court." *Id*. Although the scream likely frustrated or angered the magistrate, the Court felt that it did not rise to the level of presenting an imminent threat to the administration of justice. The Court noted that the contempt power "is not to be invoked for actions that offend one's sensibilities or when a judicial officer feels personally affronted or disrespected." *Id*. at ¶ 33. "Sending someone to jail is not the adult equivalent to sending a child to his or her room for a time-out." *Id*. at ¶ 35. Specifically, the Court noted that judges and magistrates have a duty to "be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials and others with whom the judge deals in an official capacity". Jud.Con.R. 2.8(B). *See also Disciplinary Counsel v. Carr*, 2022-Ohio-3633 (holding that contempt was not appropriate when defendant did not act out physically, refuse to follow a lawful order, fail to cooperate

---

[3] This was the only allegation of misconduct in the case before the Court.

or engage in any conduct that required a contempt citation to alleviate an immediate threat to the administration of justice) and *Disciplinary Counsel v. Gaul,* 2023-Ohio-4751 (holding that defendant's statement to the judge that raising the amount of bond made the judge look stupid did not warrant a contempt finding and that judges have a duty to treat people with patience, courtesy and dignity, even those who are difficult).

{¶15} Here, the magistrate in her order based the contempt finding on Appellant's alleged violations of the rules of Professional Conduct. Specifically, the magistrate found that counsel's repeating of arguments already ruled upon and consisting of matters likely to be appealed was contemptuous behavior. The magistrate noted that she took offense to Appellant stating that she was not following the local rules in his motions to set aside her orders that had been previously filed. Although the magistrate's personal feelings or sensibilities may have been aroused, our review of the pleadings filed by Appellant does not reveal an imminent threat to the administration of justice warranting a criminal contempt finding. *See Lodico*, 2005-Ohio-172 at ¶ 47. This Court notes that although matters submitted in written filings may reach the level of contempt, they do not create a matter that requires immediate punishment to maintain the court's authority. As a result, any alleged contempt arising from Appellant's pleadings was not subject to a summary contempt proceeding and should have been handled through a separate hearing where due process rights were provided to Appellant. *See Pheils v. Palmer*,

1999 WL 739696 (6th Dist. Mar. 19, 1999) (holding that statements in a motion for reconsideration did not present an imminent threat to orderly proceedings and thus should not be subject to a summary contempt finding) and *Dean*, 2007-Ohio-1031 at ¶ 22 (absent a need for immediate suppression of misbehavior, an evidentiary hearing is required even if the contempt is direct). It is also evident that had Appellant employed a greater level of tactfulness accompanied by a cogent argument to explain his allegations against the court, the situation may well have been avoided.

{¶16} Next, the magistrate claimed that Appellant behaved contemptuously by arguing "that the Court was acting beyond its authority, acting contrary to the Constitution of the United States, and abusing the process all the while" and then telling the magistrate that "you need to go on the record." Doc. 69. The magistrate noted that she warned Appellant about his tone and that "his arguments were crossing the line from advocacy to abuse of the Court". Doc. 69. The magistrate also notes that Appellant was "warned multiple times about his tone and demeanor".[4] Doc. 69. The magistrate, and the judge via the denial of the motion to vacate, determined that Appellant's tone and demeanor justified summary contempt proceedings. However, the only thing placed on the record was that Appellant was

---

[4] Appellant reports a different version of what happened in chambers in his motion to vacate the contempt finding.

making arguments that could later be argued on appeal[5], had a "tone", and insisted that they go on the record[6].

> By not placing the court's reasons for finding an individual in direct, summary contempt of court on the contemporaneously recorded record in the presence of the accused, a potential for abuse, whether real or imagined, is created. A judge reviewing the transcript of the hearing in which the accused was held in contempt of court, sensing that the record does not show the accused guilty of contempt beyond a reasonable doubt, could literally "invent" supporting facts by simply stating that the offending occurrences took place in chambers or "off the record". In such a situation where the court needs to place additional facts in the record to support the contempt finding[,] fundamental fairness, if not due process of law, would favor a hearing in which the accused is permitted to present his or her answer to all the allegations and factual findings of the court.

*Lodico* at ¶ 81. Although the magistrate made these conclusions, the record does not affirmatively show such conduct as it did not occur on the record. In summary proceedings, the record must affirmatively show the conduct was an imminent threat to the administration of justice. Conclusory statements that the behavior was unprofessional is not sufficient to meet this burden. *See Schiewe*, 110 Ohio App.3d 170.

{¶17} The magistrate also took issue as to what happened while on the record. This Court notes that in addition to a transcript, we were presented with a video of the hearing at issue, which allowed the Court to hear the tone of Appellant's

---

[5] This Court notes that magistrate orders and rulings denying the motions to vacate are not final orders subject to immediate appeal as they can be modified at any time by the trial court. The appeal may only be taken from the final order and then the issues can be reviewed if they are not made moot by the final ruling.

[6] Having arguments and discussions placed on the record is the only way they can be reviewed by the appellate court at a later date as appellate review is limited to the record made in the trial court. *Salpietro. Salpietro*, 2023-Ohio-169 (6th Dist.).

speech and to observe his demeanor. Although the magistrate described Appellant's behavior and arguments as "disrespectful", the video does not show this to be the case. Appellant made arguments on behalf of his client. While some of his word choices could have been more diplomatic, they did not cross the line to being contemptuous. This court did not observe or hear anything from Appellant that could be classified as an imminent threat to the orderly court proceedings that needed to be instantly suppressed. This Court notes that only the magistrate, Appellant, opposing counsel, and the deputy were in the room. At no time did Appellant raise his voice, leave his seat, or impede the proceedings. The magistrate took offense to him repeating the arguments previously made for the record. However, when the magistrate pointed out that these arguments had already been ruled upon, Appellant agreed.

{¶18} Additionally, there was a point in the proceedings where Appellant told the magistrate he was seeking clarification of an order and the magistrate provided it. Appellant then stated, "I think that clears it up then." Tr. 8. That could have ended the whole discussion and they could have moved on to other matters. The Supreme Court of Ohio held that when a judge encounters a difficult person who irritates them, the judge should not allow a bad situation to become worse by continuing unnecessarily to engage the person. *Gaul*, 2023-Ohio-4751 at ¶ 56-57. "Judges – especially trial-court judges – deal with people of varying tempers on a near-daily basis, and a judge's encountering a difficult person does not excuse the

judge's duty to exercise fair and impartial judgment and to treat that person with patience, courtesy, and dignity." *Id*. at ¶ 56. The Court then determined that the unnecessary interaction prejudiced the defendant and led to the finding of contempt. *Id.* at ¶ 57. Without the judge's continued engagement, the contempt finding would not have occurred. *Id*. at ¶ 57. The Court went on to state that although courts of law are "often a place for disagreement and argument" including between the judge and others, "judges must recognize when they need to control such a situation and take the high road." *Id*. at 58.

{¶19} Having reviewed the record in full, including the video tape of the proceedings, we do not find that the record affirmatively demonstrates that Appellant's conduct was contemptuous beyond a reasonable doubt. The trial court abused its discretion in denying the motion to vacate the contempt order against Appellant. The assignment of error is sustained.

{¶20} Having found error prejudicial to Appellant in the particulars assigned and argued, the judgment of the Common Pleas Court of Logan County, Family Court Division is reversed and is vacated.

*** Judgment Reversed***
*** And Vacated***

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**